In Re: Appeal of Ross Township, Pennsylvania.
Ross Township, Appellant.

Argued September 8, 1975, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*Edward H. Feege,* with him *Hayes and Feege, P.C.,* for appellant.

*Dina G. McIntyre,* with her *McIntyre & McIntyre,* for appellee.

OPINION BY JUDGE WILKINSON, November 7, 1975:

This is an appeal from certain provisions of the award of a board of arbitration made under the provisions of the Act of June 24, 1968, P. L. 237, Section 1, *as amended,* 43 P. S. §217.1, et seq. Appellant appeals from specific provisions in the award which will be considered specifically.

## I

### Interference with Inherent Managerial Rights

The 4 specific provisions objected to on this basis, in substance, provide:

(a) Shift assignments shall not under any circumstances be made for disciplinary or punitive purposes.

(b) All general overtime details shall be made available to all Policemen on a seniority basis.

(c) Any suspension noted on a Policeman's service record that is more than five years old shall in no way be considered for determining eligibility for promotion or the length of future suspensions.

(d) All benefits and terms and conditions of employment not modified by this Award are to remain in effect.

The recent decision of the Supreme Court of Pennsylvania in *Pennsylvania Labor Relations Board v. State*

*College Area School District,*      Pa.     , 337 A.2d 262 (1975), while dealing specifically with the Public Employe Relations Act, Act of July 23, 1970, P. L. 563, *as amended,* 43 P. S. §1101.101, et seq , sets forth the guidelines which we must follow in resolving these questions. We need not restate these guidelines here. Applying them, we conclude that these provisions do not constitute an impermissible intrusion into the inherent managerial rights of appellant. One which gives us the most problem is (c). Certainly the balance to which Justice NIX referred in *State College Area School District* would be tipped in favor of it being an unwarranted intrusion on the inherent rights of management if it precluded any consideration of any past suspension in determining eligibility for promotion. When the exclusion relates only to suspensions over five years old, the balance tips the other way.

## II

### Pension Benefits

The arbitration award reduced the retirement age from 55 to 50 and under certain circumstances made it possible to force retirement after age 50. As clearly set forth in Section 3 of the Act of May 29, 1956, P. L. (1955) 1804, *as amended,* 53 P. S. §769, and as discussed in *Cheltenham Township v. Cheltenham Police Department,* 8 Pa. Commonwealth Ct. 360, 301 A.2d 430 (1973), a reduction in retirement eligibility below 55 may only be made if an actuarial study of the cost shows that such reduction in age is feasible. It is clear that no such study was made in this instance which took into account the changes in cost relating to wage increases and other matters which were effectuated by this arbitration award. An actuarial study was made but, at best, it included only a wage increase of 8%, whereas this award gives a wage increase of in excess of 10%. Therefore, those parts of paragraph 6 (a) of the award relating to the reduction

of age of eligibility for retirement below 55 must be set aside. The rights of a widow of a police officer to retirement benefits as set forth in paragraph 6 of the award have not been challenged.

### III

### Pension Contributions

Paragraph 6(b) of the award provides:

> "Policemen shall contribute, annually, no more than 6% of wages to the Police Pension Fund for the term of this award."

This has been challenged as being violative of Section 6 of the Act of May 29, 1956, P. L. (1955) 1804, *as amended,* 53 P. S. §772, which *inter alia,* fixes the minimum contribution to be 5% and the maximum 8%. Appellant argues that the arbitration award could not fix 6% without an actuarial study to support it. Suffice it to say that the law makes it a statutory requirement to have an actuarial study with regard to payments into the fund by members only when reducing such payments below 5% or eliminating them.

Accordingly, we enter the following

### ORDER

Now, November 7, 1975, the award of the Board of Arbitration is modified to exclude those parts of paragraph 6 which reduce the age of retirement to 50 years of age.

———

CONCURRING AND DISSENTING OPINION BY PRESIDENT JUDGE BOWMAN:

It is not clear from the record whether paragraph 6 of the disputed arbitration award, which limits the members' contribution rate to a maximum of 6%, constitutes an increase, decrease or simply a continuation of the pre-existing rate. In any event, it is my opinion that this provision of the award must also be set aside incident to

our setting aside the reduced retirement age for want of an actuarial study as to its feasibility. The actuarial soundness of a police pension plan incident to possible reduction of retirement age eligibility may very well depend upon projected contribution rates at different percentages. These two major components of actuarial study and projection are so essential, one to the other, that I would set aside paragraph 6 of the arbitration award in its entirety.

Judge MENCER joins in this concurring and dissenting opinion.