452 A.2d 496

## In re Appeal of Louise STANTON.

Supreme Court of Pennsylvania.

Argued April 15, 1982.

Decided Nov. 5, 1982.

Joel M. Scheer, Easton, for appellant.

Herbert V. Giobbi, Asst. City Sol., for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

OPINION OF THE COURT

FLAHERTY, Justice.

This case raises the issue whether, under Section 4321 of the Third Class City Code (Code), any pension benefit entitlement can accrue to the widow of a firefighter who was not eligible for a pension at the time of his death, where the death was not job-related.

Appellant, Louise Stanton, is the widow of William G. Stanton, an employee of the City of Easton Fire Department, who died on July 16, 1974 in an accident that was not job-related. Prior to his death, Mr. Stanton had been employed by the fire department for four years, and was not yet entitled to pension benefits inasmuch as he had satisfied neither the service nor age requirements of the pension plan. The Commonwealth Court affirmed the denial of Mrs. Stanton's claim for pension benefits and this appeal followed.[1] For the reasons that follow, we reverse.

Appellee, City of Easton, contends pension benefits to widows are derivative and, thus, since appellant's decedent was ineligible to receive pension benefits, appellant is, likewise, ineligible. We disagree. The statutory scheme clearly indicates the legislature has conferred on appellant an independent right to a pension.

 The Code, Act of June 23, 1931, P.L. 932, *as amended*

---

1. The Opinion of the Commonwealth Court exposits the lengthy and complicated history of this case at 44 Commonwealth Ct. 34, 36, 403 A.2d 1013, 1014 (1979).

by the Act of July 20, 1968, P.L. 434, No. 204,[2] provides several indicators of the legislature's intent to benefit firefighters' widows and orphans. First, prior to the 1968 amendment, Section 4321 of the Code provided for payments to widows of members retired on pension or killed in the service on or after January 1, 1960, only if council elected to pay. Section 4321, *as amended* in 1968, removed council's elective function and mandated payments to widows as follows:

Upon the death of a member who retires on pension or is killed in the service on or after January 1, 1960, or who dies in the service on or after January 1, 1968, *payments* as hereinafter provided *shall be made to his widow during her life so long as she does not remarry.*

*Id.,* § 2. (Emphasis added). Secondly, the preamble to the 1968 amendment states as one of its purposes "that payments to widows and children under certain conditions shall be mandatory."[3] Thirdly, Section 4320 authorizes establishment of firemen's pension funds for the benefit of three classes of persons: "[1] such members of the fire department as shall receive honorable discharge therefrom by reason of service or age or disability, [2] widows of retired members and [3] *the families of such as may be killed or who die in the service.*" *Id.,* § 1. (Emphasis added). Clearly, protection of the surviving spouse was one of the objectives intended to be accomplished under the amendments to the Code, and, indeed, payments to widows of members who die in the service are mandated.

The legislature further provided in Section 4322:

Payments to widows of members retired on pension or killed in the service on or after January 1, 1960, or who die in the service on or after January 1, 1968, shall be the

**2.** The 1978 amendments to the Code are not pertinent to the resolution of the issues before us, and would not warrant a different disposition of this case.

**3.** The Statutory Construction Act of 1972 provides, *inter alia,* "The title and preamble of a statute may be considered in the construction thereof." Act of December 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.C.S.A. § 1924 (Supp.1982–1983).

amount payable to the member or which would have been payable had he been retired at the time of his death. *Id.,* § 3. This section tells us that the amount to be paid is the amount the member would have received "had he been retired at the time of his death." The section does not, as appellee asserts, discuss eligibility for retirement; instead, it treats the deceased member as hypothetically retired, solely and merely for the purpose of *calculation of the amount* of benefits rather than for the purpose of *determining eligibility* for benefits. Had the legislature intended to exclude payments to widows of those members not yet eligible for retirement at the time of death, presumably the language of the statute would have indicated that benefits would be payable only if the member were actually eligible for retirement at the time of death. We agree with appellant, therefore, that a firefighter's widow's right to pension benefits is not derivative, and a deceased firefighter's ineligibility for retirement benefits does not affect his widow's independent, statutorily conferred right to benefits.

■ Whether the widow's right to benefits is affected by the fact that her husband dies in a non job-related accident, turns on the meaning of the phrase in Section 4321 providing for payments to the widow of a "member . . . who dies in the service." Assuming the language to be ambiguous, viz., that the phrase could mean members who die while on duty, members whose deaths are job-related, or members who die while employed by the fire department, we perceive this assumed ambiguity to be clarified, by implication, in Section 4327. Prior to the 1968 amendment, Section 4327 provided, *inter alia,* for the refund to the estate of a member of the fire department of all contributions paid into the pension fund by the member in the event of the death of the member, not in the line of service, before the member became entitled to his pension. However, Section 4327 *as amended* in 1968, provides in pertinent part, as follows:

> In the event of the death of a member of the fire department not in the line of service before the member becomes entitled to the pension aforesaid *and such mem-*

*ber* is not survived by a widow or family entitled to payments as hereinbefore provided, the total amount of contributions paid into the pension fund by the member shall be paid over to his estate.

*Id.,* § 5. (Emphasis added to indicate amendment). As Judge Craig points out in his dissenting opinion in the Commonwealth Court, Section 4327 contemplates the situation in this case: the non job-related death of a member of a fire department before the member is entitled to a pension. In such a case, if the member is not survived by a widow or eligible family members, his contributions to the pension fund are paid to his estate. But what if the member *is* survived by a widow? Section 4327 is silent on this possibility except to refer us to benefits for widows and families "hereinbefore provided."

Presumably, then, we are directed to Section 4321 to re-interpret the meaning of the provision mandating payment to the widow of a "member ... who dies in the service" in light of the provisions of Section 4327. Because the legislature amended Section 4327 to provide for *refund of contributions* to the member's estate *where the member is not survived by a widow or family entitled to payments,* where the member's death was not job-related and the member was not entitled to a pension, leaving conspicuously unaddressed the situation where a member *is* survived by a widow, we conclude that widows of such members are not to be excluded, and that a member "who dies in the service" should be understood to mean a member who dies while employed by a fire department. Further, this interpretation is bolstered by the observation that had the legislature intended "dies in the service" to mean "job-related death," it would have used specific language of the sort used in Section 4327, where the phrase "in the line of service" appears. When the legislature wanted to specify activity related to firefighting, it knew how to do so, but it did not do so in the case of the language in Section 4321.

Accordingly, we reverse the Order entered below and remand to the Board for computation of benefits to be paid

to appellant by applying the statutory assumption that decedent was retired at the time of his death.

Order reversed and case remanded for proceedings consistent with this Opinion.

NIX, J., files a Dissenting Opinion in which O'BRIEN, C.J., and HUTCHINSON, J., join.

NIX, Justice, dissenting.

I am dismayed by the majority's unwarranted use of public funds and their total disregard for their obligation to ascertain the true legislative intent. The majority has contrived an ambiguity to distort a legislatively created contributory pension scheme to the point where it loses its character and becomes an unprecedented largesse. Third Class City Code, Act of June 23, 1931, P.L. 932, as amended, 53 P.S. § 39320, *et seq.* (Code). This unfortunate result is reached by an unthinking contravention of the cardinal precepts of statutory construction and a patent disregard of a most informative legislative history.

The majority holds that a surviving widow of a deceased fireman, whose death occurred before the member reached pension eligibility, is entitled to full benefits where the death was completely unrelated to the employment. Today's holding would permit full compensation to a surviving spouse of any member of the department who dies, from the moment of the commencement of the member's employment, without regard to a causal relation between the death and the employment or the pension eligibility of the member at the time of death. Such a result is totally foreign to the concept of a contributory pension and is in effect a gratuity ultimately born by the public without a corresponding public benefit. *Such an interpretation ignores the underlying concept of a contributory pension scheme, in that the only justification for a deviation from the eligibility requirements is the hazardous nature of the employment and the causal connection between the employment and the death which prevented the member from reaching a vested status.*

William G. Stanton was employed as a firefighter in the City of Easton on June 10, 1970. On July 16, 1974, Mr. Stanton, while off duty, was killed in a motorcycle accident while traveling to a sports event for his own amusement. At the time of the fatal accident, Mr. Stanton had been so employed for a period of four (4) years. Moreover, there is no assertion in the record that Mr. Stanton had reached the age requirement for retirement; to the contrary, it appears likely that he was much younger than the fifty-year minimum age requirement.[1]

The entitlement provision relied upon by the widow is Section 4321. Section 4321 provides in pertinent part:

... Upon the death of a member who retires on pension or is killed in the service on or after January 1, 1960, or who dies in the service on or after January 1, 1968, payments as hereinafter provided shall be made to his widow during her life so long as she does not remarry.

Significantly, appellant has consistently offered the 1968 amendment to section 4321,[2] "or who dies in the service on or after January 1, 1968," as the justification for recovery. She has conceded, and no one has argued otherwise, that she would not have been entitled under the earlier provision which permitted recovery for surviving spouses of members who were "killed in the service on or after January 1, 1960." Notwithstanding, the majority now interprets the Code in such a manner that appellant would be entitled to recover under either provision.

In addition to Section 4321, the other sections in the Code

1. The minimum eligibility requirements for firemen employed by the City of Easton were twenty (20) years of service and the attainment of fifty (50) years of age. *See* 53 P.S. § 39321 and section 149.06 of the Codified Ordinances of the City of Easton. Moreover, during the period prior to vesting, the employee is required to contribute to the pension fund. 53 P.S. § 39320.

2. The 1968 amendment to Section 4321, in pertinent part, added the words "or who dies in the service on or after January 1, 1968." It is significant that the legislature made no effort to change the language of the former text.

specifically relating to the rights of the surviving spouse[3] are Section 4322,[4] and Section 4324[5]. In each of these sections the key words to the entitlement for surviving spouses of members dying prior to reaching pension eligibility are "member," "killed or dies," and "in the service." Acceptance of the majority's interpretation would leave the phrase "in the service" totally without meaning, since their definition of that phrase is synonymous with the definition of "member." We are thus forced to conclude that the precise and repeated use by the legislature of the phrase "in the service" in each of the critical sections specifically dealing with the right of the surviving spouse was without purpose. Such a result is in clear contravention of the principle that the legislature intends the entire statute to be effective and certain, 1 Pa.C.S.A. § 1922(a), and that all of the words used by the legislature are to be given meaning. *Commonwealth v. Driscoll,* 485 Pa. 99, 401 A.2d 312 (1979); *Commonwealth v. Cain,* 484 Pa. 240, 398 A.2d 1359 (1979); Sutherland, Statutory Construction, § 46.06 (4th ed. 973) ("It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute.")

The development of the Code in its present form leads to the inevitable conclusion that the legislature clearly intended to establish three classes of surviving spouses entitled to payments. Initial legislative recognition of the surviving

3. The Act of October 4, 1978, P.L. 950, No. 188, §§ 5–11 amended the sections of the Code relating to firefighters' pension funds by changing sex-based references to widows to "surviving spouse."

4. Section 4322 provides in pertinent part:
 . . . Payments to widows of members retired on pension or killed in the service on or after January 1, 1960, or who die in the service on or after January 1, 1968, shall be the amount payable to the member or which would have been payable had he been retired at the time of his death. . . .

5. Section 4324 provides in pertinent part:
 . . . Council may exceed the limitations imposed by this section if an additional amount is deemed necessary to provide suffcient funds for payments to surviving spouses of members retired on pension or killed or who die in the service. . . .

spouse as a distinct recipient of pension payments occurred through the July 27, 1959 amendment to the Code. Section 4321 was amended to provide in pertinent part:

> Upon the death of a member who retires on pension or is killed in the service on or after January 1, 1960, payments as hereinafter provided may, if council so elects, be made to his widow during her life so long as she does not remarry.

The 1959 amendment represented the legislative judgment that cities of the third class should be given the option to provide benefits to surviving spouses of pension eligible members and to provide benefits even without pension eligibility for surviving spouses of members killed as a result of the performance of their duties.[6]

The July 20, 1968 amendment to section 4321 expanded the classes of surviving spouse to include spouses of a deceased member "who dies in the service." While the word "killed" implies a death resulting from a traumatic event, "dies" in this context is a general term describing the cessation of life, absent an immediate traumatic onslaught. The definitional distinction between the words "killed" or "dies," coupled with the legislative history of the use of these two words in the Code, provides additional guidance in clarifying the legislative intention. 1 Pa.C.S.A. § 1921(c)(5) and (7); *Matter of Employees of Student Services,* 495 Pa. 42, 432 A.2d 189 (1981); *Hellertown Mfg. Co. v. Commonwealth,* 480 Pa. 358, 390 A.2d 732 (1978); *see also Rossiter v. Whitpain Twp.,* 404 Pa. 201, 170 A.2d 586 (1961); *Martin's Estate,* 365 Pa. 280, 74 A.2d 120 (1950). The July 20, 1968 amendment to the Code, consistent with a trend in many areas recognizing more remote job-related deaths, e.g., stress related deaths or deaths not directly related to the hazardous aspect of the employment, embraced that concept and articulated the expansion of coverage by the use of the phrase "dies in the service."

**6.** The 1968 amendment to Section 4321 made payments to surviving spouses mandatory.

The majority's insistance that the phrase "in the service" does not require a causal connection between the death and the employment forces the irrational conclusion that between 1960 and 1968 the legislature preserved a distinction between an *unrelated traumatic death* for which the surviving spouse would receive benefits and an *unrelated non-traumatic death* for which no benefits would be received by the surviving spouse. *See,* 1 Pa.C.S.A. § 1922(1) (The General Assembly "does not intend a result that is absurd . . . or unreasonable.") If it is to be accepted that no causal relationship between the employment and the death was intended to be required, the nature or character of the death, i.e., traumatic or non-traumatic, would be clearly irrelevant to the entitlement to benefits. Our previous decision recognized this obvious fact, and properly interpreted "killed in the service" as a legislative judgment that the spouse of a member killed as a result of the performance of his duty was entitled to these benefits even though the member had not reached pension eligibility. *Banks v. Wilkes-Barre,* 418 Pa. 89, 209 A.2d 852 (1965). The 1968 legislative decision to expand the protection to non-traumatic deaths causally connected to the employment does not offer a basis for ignoring the predicate for the entitlement, i.e., a death resulting from the employment. This is particularly true since the legislature in each instance used precisely the same words of limitation, i.e., "in the service."

The majority's analysis, on the other hand, obliterates all distinctions between the three classes of recipient spouses. The effect upon Section 4321 reduces the operative words of the section to:

> Upon the death of a member . . . payments as hereinafter provided shall be made to his widow during her life so long as she does not remarry.

Contributory pension funds are actuarially designed on a theory of an adjusted compensation for time and services, payable in the future, provided the employee serves the required length of time and reaches the required age. *Lowe v. Jones,* 414 Pa. 466, 200 A.2d 880 (1964); *Hickey v. Pitts-*

*burgh Pension Bd.,* 378 Pa. 300, 106 A.2d 233 (1954); 60 Am.Jur.2d § 41. *Cf. Busser v. Snyder,* 282 Pa. 440, 128 A. 80 (1925). Acceptance of the majority's definition of "in the service," guarantees a surviving spouse's receipt of benefits regardless of whether the deceased member had reached pension eligibility and without consideration of the cause of death. Thus, the three categories have been eliminated and protection is now accorded to all surviving spouses without qualification.[7] The majority attempts to support its interpretation by an equally strained construction of Section 4327.

The only justification for this extraordinary result is the purported ambiguity created by Section 4327. First, it is to be noted that Section 4327, by its own terms, does not purport to define the benefits to a surviving spouse, but rather refers back to those earlier provisions of the Code, i.e. Sections 4321, 4322 and 4324. Secondly, Section 4327 is concerned, not with pension benefits, but rather with the entitlement of a non-eligible member or his estate in the event that service is terminated prematurely. The majority uses this section as its sole predicate for the extraordinary interpretation it adopts. It is argued that in view of this language we should conclude that "in the service" does not require the death to be non-job related. I suggest that an equally reasonable interpretation, which is infinitely more acceptable in view of the history and the rules of statutory construction, is that this section merely reflects a recognition that if there is a surviving spouse, where the death was not causally connected with the employment, the contributions are to be made to the surviving spouse and not the estate. Thus the inclusion of the surviving spouse in Section 4327 was not for the purpose of conferring benefits which had "not hereinbefore" been extended, but rather to indicate that the spouse, if one survives a non-pension eligible deceased member, is entitled to the member's contribution as opposed to the estate of the deceased member.

7. The surviving spouse, after entitlement, may receive benefits ". . . so long as she does not remarry." 53 P.S. § 4321.

Equally strained is the majority's attempt to note the difference in the phrase "in the service" which appears in Sections 4321, 4322 and 4324 and "in the line of service" appearing in Section 4327. Although the majority correctly notes that Section 4327 was modified in 1968, it omits mentioning that the clause which includes, "in the line of service" was a carry-over from the 1957 provision, and was, of course, inserted in the Code prior to any provision for a surviving spouse. The disparity caused by the legislative failure to conform its earlier language to the 1959 and 1968 amendments creating the surviving spouse's benefits certainly does not warrant the conclusion that the majority seeks to establish.

Accordingly, I would hold that appellant is not entitled to benefits and is limited to the contributions of her deceased spouse pursuant to Section 4327.

O'BRIEN, C.J., and HUTCHINSON, J., join in this dissenting opinion.