Board of Supervisors for Newtown Township, Appellant *v.* James Chirico, Thomas Newby, III, and Brian McNeill, Appellees.

James Chirico, Thomas Newby, III, and Brian McNeill, Appellants *v.* Board of Supervisors for Newtown Township, Appellees.

Argued December 13, 1984, before Judges Mac-Phail and Barry and Senior Judge Kalish, sitting as a panel of three.

*Joanne R. Denworth.* with her, *Robin T. Locke, Sugarman, Denworth & Hellegers,* for appellant/appellees, Board of Supervisors of Newtown Township.

*Alexander A. DiSanti, Richard DiSanti, Hamilton, Gallagher & Paul,* for appellants/appellees, James Chirico et al.

*Anthony C. Busillo, II, Mancke, Lightman & Wagner,* for Amicus Curiae, Pennsylvania Lodge of Fraternal Order of Police.

*Thomas L. Wenger,* with him, *Karen Parenti Gunnison, Wix, Wenger & Weidner,* for Amicus Curiae, Pennsylvania State Association of Township Supervisors.

OPINION BY JUDGE MACPHAIL, March 6, 1985:

Cross appeals were taken to this Court by the Board of Supervisors of Newtown Township (Township) and officers of the Newtown Township Police Department from an order of the Court of Common Pleas of Delaware County which directed the township to comply in part with arbitration awards made in 1975 and 1976 in favor of the Newtown Township Police Department. By order dated December 31, 1981 this Court affirmed the trial court in part and reversed in part.[1] Our order was subsequently affirmed in part and reversed and remanded in part by the Supreme Court of Pennsylvania.[2] That Court stated that we erred when we held that the trial court could not consider the alleged illegality of the awards. We were directed to decide whether the portions of the award of the Board of Arbitration (Board) challenged by the Township were illegal, the Supreme Court having stated that if such provisions were illegal they were unenforceable in the mandamus action instituted by members of the police department in the trial court who are now before us in the instant appeal.[3] Having heard reargument, we now proceed to dispose of those issues.

---

[1] *Chirico v. Board of Supervisors for Newtown Township,* 63 Pa. Commonwealth Ct. 591, 439 A.2d 1281 (1981).

[2] *Chirico v. Board of Supervisors for Newtown Township,* 504 Pa. 71, 470 A.2d 470 (1983).

[3] Officers James Chirico, Thomas Newby, III and Brian McNeill.

## History

Paragraph 10 of the Board's award for the calendar year of 1975 was as follows

> *Disability benefits*—If an Officer is permanently and totally disabled from performing police work for the Township of Newtown, whether from service connected or non-service connected disability, he shall receive 65% of his salary at the time of this determination as a pension that shall continue until his death.

Paragraph 5 of the Board's award for the calendar year 1976 read in pertinent part as follows:

> Elective retirement at age 53 after 25 years of service as awarded by the 1971 Board of Arbitrators (for 1972) is reconfirmed. The actuarial study presumed by that arbitration award should be completed by December 31, 1975 and it shall be paid for by the Township.

When the Township refused to implement those awards a suit in mandamus was commenced for enforcement.

Regarding the 1975 award, the trial court concluded that the Township was correct in its contention that retirement benefits were limited to 50% of the retiree's salary by the provisions of Section 5 of the Act of May 29, 1956, P.L. (1955) 1804 (Act), *as amended,* 53 P.S. §771, which provides in pertinent part

> Monthly pension or retirement benefits other than length of service increments shall be computed at one-half the monthly average salary of such member during not more than the last sixty nor less than the last thirty-six months of employment.

The trial court also held that the Township was incorrect in its assertion that retirement benefits were

not available to employees retired as the result of non-service connected total disability.

Regarding the 1976 award, the trial court held that inasmuch as no actuarial study regarding feasibility had been made, the reduction in retirement age was not enforceable, citing Section 3 of the Act, 53 P.S. §769, which reads in pertinent part as follows

> Each ordinance or resolution establishing a police pension fund . . . shall fix the age of the members of the force at fifty-five years, or, if an actuarial study of the cost shows that such reduction in age is feasible, may fix the age of the members of the force at fifty years. . . .

In the instant appeal, the Township contends that the trial court erred when it upheld that part of the 1975 award which authorized pension benefits for persons with non-service connected disabilities. The police have cross-appealed as to the trial court's decision that disability retirement benefits were limited to 50% of salary and that an actuarial study as to feasibility must precede a reduction in the retirement age.

### The 1975 Award

It is the Township's position that nothing in the Act *authorizes* the payment of non-service connected disability benefits. The trial court held that nothing in the Act *prohibited* the Township from paying such benefits. In *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969), our Supreme Court held that unless the municipality against whom an arbitration award had been made was prohibited by some higher authority from making the payments which were the subject of the award, the municipality was bound to implement the award. The Township contends that it is the language in Section 5 of the Act

which restricts payments from the fund to service connected disabilities. The pertinent language is

In the case of the payment of pensions for permanent injuries incurred *in service* and to families of members killed *in service,* the amount and commencement of the payments shall be fixed by regulations of the governing body of the borough, town or township. (Emphasis added.)

The police, however, point to the language in Section 1 of the Act, 53 P.S. §767, which authorizes the establishment of the fund. There it is said that

Such fund shall be under the direction of the governing body of the borough, town or township, and applied under such regulations as such governing body, by ordinance or resolution, may prescribe for the benefit of such members of the police force as shall receive honorable discharge therefrom by reason of age and service, *or disability.* . . . (Emphasis added.)

The police argue that had the legislature intended to restrict disability benefits to those which are service connected it certainly knew how to do so[4] and its failure to do so is indicative of its intent not to so restrict disability payments.

In *Appeal of Stanton,* 499 Pa. 151, 452 A.2d 496 (1982), our Supreme Court construed the term "in service" as used in Section 4321 of The Third Class City Code, 53 P.S. §39321, relating to pensions for firefighters who are killed or who die in the service, to mean those persons who are *employed* by a fire department at the time of death. We believe a similar

---

[4] *See* Section 5704(f) of the State Employees' Retirement Code, *as amended,* 71 Pa. C. S. §5704(f) and Section 4327 of The Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §39327.

construction can and must be given to the same words in Section 5 of the Act.

In any event, we are constrained to agree with the police that nothing in either Section 1 or Section 5 of the Act *prohibits* benefits for non-service connected disability. Inasmuch as pensions are a proper subject for bargaining under the provisions of Section 1 of the Act of June 24, 1968, P.L. 237, 43 P.S. §217.1, we hold that the award authorizing non-service connected disability payments is not illegal and is enforceable in an action of mandamus.[5]

We next proceed to a consideration of that part of the 1975 award which would grant to totally disabled police a pension at the rate of 65% of monthly salary. As we have previously noted, the plain language of Section 5 of the Act imposes a limit of not more than one-half of the monthly average salary of the beneficiary. The police contend that the limiting language of Section 5 only applies to persons who are retiring from service. While it is true that the first paragraph of Section 5 does talk of retirement, the second paragraph also speaks of pensions for permanent injuries. We note that Section 5 is the only section in the Act dealing with the payment of benefits and the amount thereof. The fact that disability payments are mentioned after the restrictive language concerning the amount of payments is not, in our opinion, of any

---

[5] Township arguments concerning the economic impact of the award upon a fund which the Act specifically says shall be the sole source of payments to beneficiaries, are not impressive. Nothing in the record substantiates the contention that there will be many police who will become totally disabled by non-service connected accidents. We note that the same uncertainty prevails in speculating as to how many service connected disability claims will be made in a given year. Where the problem has been created by language in the statute, the remedy is legislative not judicial action.

major significance. We do not believe that the legislature intended that those receiving benefits by reason of service and age should have a "cap" on their benefits while those who are disabled have no such limit.

In summary, we affirm the trial court's order with respect to the 1975 award.

## 1976 Award

As we have noted, the trial court construed the language in Section 3 of the Act to mean that a reduction in retirement age must be *preceded* by an actuarial study showing that such a reduction in age is feasible. The trial court has ample case law support for that conclusion. In *Cheltenham Township v. Cheltenham Police Department,* 8 Pa. Commonwealth Ct. 360, 301 A.2d 430 (1973), *In Re Appeal of Ross Township,* 21 Pa. Commonwealth Ct. 541, 346 A.2d 836 (1975) and *In the Matter of Arbitration Between Montgomery Township Police Department and Montgomery Township Board of Supervisors,* 22 Pa. Commonwealth Ct. 653, 349 A.2d 917 (1976), our Court has uniformly held that the actuarial study must come first.

We cannot agree with the police that the facts of the instant case are different from those presented in the prior cases this Court has decided. Neither are we persuaded by the argument that until the award is in place the actuarial study cannot be made. The reverse would be equally true; once the award is in place, the actuarial study becomes irrelevant. We think the statutory language is clear and requires no judicial interpretation or construction; the actuarial study must precede any reduction in retirement age.

We affirm the trial court's decision that paragraph 5 of the 1976 award is illegal and unenforceable.

128

ORDER

The order of the Court of Common Pleas of Delaware County entered November 13, 1980, is affirmed.

Judge WILLIAMS, JR., did not participate in the decision in this case.