544 A.2d 1313

James CHIRICO, Thomas Newby, III and Brian McNeill, Appellants,

v.

BOARD OF SUPERVISORS FOR NEWTOWN TOWNSHIP, Appellees.

BOARD OF SUPERVISORS FOR NEWTOWN TOWNSHIP, Appellant,

v.

James CHIRICO, Thomas Newby, III and Brian McNeill, Appellees.

Supreme Court of Pennsylvania.

Argued Dec. 9, 1987.

Decided July 28, 1988.

Alexander A. DiSanti, Media, for Chirico et al.

Anthony C. Busillo, II, Harrisburg, for amicus—Pa. Lodge, F.O.P.

Robert J. Sugarman, Walter W. Cohen, Philadelphia, for Bd. of Sup'rs for Newton Tp.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

We granted cross-petitions for allowance of appeal to review the arbitration award granting non-service disability pension benefits in the amount of 65 percent of a police officer's monthly salary and reducing the minimum age for retirement from 55 to 53 upon completion of an actuarial study. The trial court reversed the award with regard to the percentage of pension benefits payable and in the reduction of the minimum age for retirement without the arbitrators first considering an actuarial study, but affirmed the award in granting pension benefits to a policeman not injured in the course of his employment. Commonwealth Court affirmed. 88 Pa.Cmwlth. 120, 488 A.2d 1180 (1985).

The facts are not in dispute. Pursuant to § 217.1 of the Collective Bargaining Act, Act of June 24, 1968, P.L. 237, No. 111, 43 P.S. § 217.1 et seq., a board of arbitrators was empaneled in the Fall of 1974 following an impasse in negotiations between the Newton Township Police Department and Board of Supervisors. Upon due consideration, the arbitration panel determined for calendar year 1975 that any officer permanently and totally disabled whether service or non-service related was entitled to receive 65 percent of his salary as a pension until his death. Because the township would not implement this provision on the grounds that this provision was illegal and unenforceable, the police department instituted an action in mandamus in Common Pleas Court. Thereafter, in 1975 another impasse occurred. Another panel was commissioned under § 217.1

of the Act resulting in an award reducing the retirement age from 55 to 53 after 25 years of service after the completion of an actuarial study the cost of which was to be borne by the township. The complaint in mandamus was amended to include the disagreement over the 1976 award. As previously indicated, the trial court, as well as the Commonwealth Court, affirmed in part and reversed in part the 1975 and 1976 arbitration awards. We granted allocatur to determine the proper interpretation of § 771 of the Police Pension Fund Act (Act 600) Act of May 29, 1956, P.L. (1955) 1804, 53 P.S. § 771 and now affirm in part and reverse in part.

Disposition of this appeal relies upon the proper interpretation to be given to § 771 of Act 600. The first issue raised under this section is whether a pension is permissible for a disability not incurred during the course of a policeman's employment. Nothing in § 771 explicitly permits or prohibits the payment of such a pension. In *City of Washington v. Police Department of Washington (Washington Arbitration Case)*, 436 Pa. 168, 259 A.2d 437 (1969), we held that an arbitration award may not require the implementation of an illegal act, nor require a public employer to do that which it cannot do voluntarily. However, implicit in the analysis of determining an illegal act is consideration of the authority to act. For if a public employer has no authority to act, any action by the public employer may be an illegal act.

Section 767 of Act 600 provides that benefits may be paid to a member of the police force who, "shall receive honorable discharge therefrom by reason of age and service, or disability ...", 53 P.S. 767. The Act clearly contemplates the payment of a disability pension. It does not, however, articulate whether the disability must be the result of an injury suffered during the course of one's employment (i.e. service v. non-service disability) before triggering the payment of pension benefits.

The first paragraph of § 771 of Act 600 provides for the creation of an autonomous fund and sets forth that

pension benefits based upon service and age shall be calculated in accordance with paragraph two.

> Payments made under the provision of this Act shall not be a charge on any other fund in the treasury of any borough, town or township, or under its control, save the police pension fund herein provided for. The basis for determining any pension payable under this act, following retirement of any member of the force meeting the service and age qualifications of the ordinance or resolution establishing a pension fund, shall be as follows:
>
> \* \* \* \* \* \*

53 P.S. § 771. After setting forth the calculations and limitations on pension benefits, the following provision regarding service related disabilities appears in paragraph two.

> In the case of the payment of pensions for permanent injuries incurred in service and to families of members killed in service, the amount and commencement of the payments shall be fixed by regulations of the governing body of the borough, town or township.

53 P.S. § 771. Thus, § 771 sets forth the mechanism for calculating age and service benefits as well as service related disabilities. No mention is made in this provision or any other provision of Act 600 for calculating benefits for a police officer disabled by a non-service related injury. We must therefore conclude that the legislature did not contemplate compensating police officers injured while not on duty. As the court correctly held *In the Matter of Arbitration between Borough of Ambridge and the Police Department*, 53 Pa.Commw. 251, 417 A.2d 291 (1980), a township as a creature of the Commonwealth has no inherent powers and may do only those things which the legislature permits. See also, *Lower Merion Frat. Order v. Lower Merion Twp.*, 511 Pa. 186, 512 A.2d 612 (1986), (Opinion in Support of Affirmance in Part and Reversal in Part, Zappala, J.). Since no specific power has been given to a municipality to compensate a policeman for a non-job related injury, we decline to do so.

Although initially this holding appears to be in conflict with *Appeal of Stanton*, 499 Pa. 151, 452 A.2d 496 (1982), the difference in the statutory language supports the differing results. In *Stanton*, we were asked to address the following language under the Third Class City Code,

> Upon the death of a member who retires on pension or is killed in the service on or after January 1, 1960, or who dies in the service on or after January 1, 1968, payments as hereinafter provided shall be made to his surviving spouse during his life so long as he [sic] does not remarry.

53 P.S. § 39321. There we held that "in the service" meant employed at the time of death. Thus, when the fireman died in a non-service related accident while employed by the fire department, benefits were payable.

■ The difference in the language in the two provisions although minimal is significant when read in context. The fact that the legislature in one instance used a phrase "in service" and in another used a phrase "in *the* service" connotes a distinction in the phrases themselves. "The" by its very nature restricts the word "service", to a particular "service". Thus, "in the service" permits benefits to be paid to a fireman who suffers injuries while a member of a department, while "in service" permits benefits to be paid to a member of a department who suffers injuries while performing his duties. Thus, the language differences presents a meritorious distinction.

■ The next issue is whether the township can pay service related disability pension payments in excess of 50 percent of the monthly salary. Both lower courts agreed with the arbitrators awarding a disabled officer 65 percent of his monthly salary. Finding no error, we agree. *Washington Arbitration Case, supra.*

> The relevant part of the statute states as follows: Monthly pension or retirement benefits other than lengths of service increments shall be computed at one-half the monthly average salary of such member during

not more than the last sixty nor less than the last thirty-six months of employment.

. . . . .

In the case of the payment of pensions for permanent injuries incurred in service and to families of members killed in service, the amount and commencement of the payments shall be fixed by regulations of the governing body of the borough, town or township.

53 P.S. § 771.

Specific authority is given to the municipal governing body to set pension benefits for disabled police officers. The same discretion was not given to a municipality for a police officer retiring because of service and age. When the words of a statute are clear and unambiguous, the clear meaning cannot be disregarded to achieve a different desired result. 1 Pa. C.S.A. § 1921(b). As can be seen from the quoted provision, the legislature provided an exception to the payment of 50 percent of the police officer's monthly salary in the case of a permanent disability or death. The last cited section would be unnecessary and mere surplusage if it did not mean something different than the former general section. 1 Pa.C.S. § 1922(2). Thus, the township has authority to pay a police officer injured in the line of duty 65 percent of his monthly salary. The township having such authority, the arbitrators did not err.

■ The final issued raised is whether the arbitrators erred in permitting a reduction of the retirement age from 55 to 53 without first considering an actuarial study. The relevant part of § 769 of Act 600 is as follows:

Each ordinance or resolution establishing a police pension fund shall prescribe a minimum period of total service in the aggregate of twenty-five years in the same borough, town or township and shall fix the age of the members of the force at fifty-five years, or, if an actuarial study of the cost shows that such reduction in age is feasible, may fix the age of the members of the force at fifty years, after which they may retire from active duty ...

53 P.S. § 769. In awarding a reduction in retirement age, the arbitrators stated:

Elective retirement at age 53, after 25 years of service, as awarded by the 1971 board of arbitrators (for 1972), is reconfirmed. The actuarial study presumed by that arbitration award should be completed by December 31, 1975, and it shall be paid for by the township.

Reproduced Record 56a.

Although the arbitrators appear to be qualifying the reduction in age, it is not absolute. Since we can presume a board of arbitrators does not intend to do an illegal act, we can read this provision as mandating a reduction in the retirement age if the actuarial study concludes it is feasible. Reading this provision in that light, there is no basis for rejecting this provision.

Accordingly, we reverse that part of the award granting pension benefits for non-service related injuries, and affirm those provisions granting service related disability benefits in the amount of 65 percent of the police officer's monthly salary and permitting reduction of the retirement age from 55 to 53 years of age if the actuarial study determines the reduction is feasible.

LARSEN, J., filed a concurring and dissenting opinion in which PAPADAKOS, J., joined.

LARSEN, Justice, concurring and dissenting.

I disagree with the majority in reversing the arbitration award that granted pension benefits to Newtown Township police officers who are disabled by non-service related injuries. I believe the award was lawful and proper and I would affirm that portion of the Commonwealth Court's order upholding the granting of benefits.

In *Appeal of Stanton*, 499 Pa. 151, 452 A.2d 496 (1982) we faced a similar issue. There the question was whether the widow of a firefighter who was killed in a non-job related incident, was entitled to pension benefits. In decid-

ing that question we were called upon to construe Section 4321 of the Third Class City Code which provides:

> Upon the death of a member who retires on pension or *is killed in the service* on or after January 1, 1960, or *who dies in the service* on or after January 1, 1968, payments as hereinafter provided shall be made to his widow ...

Act of June 23, 1981, P.L. 932, 23 amended by the Act of July 20, 1968, P.L. 434, No. 204 (emphasis added) We held in *Stanton* that the phrase "who dies in the service" means a member who dies while employed by the fire department. We held that the Code did not require that the firefighter's death be job-related for his widow to relieve pension benefits.

In the present case the relevant statutory provision is Section 771 of the Police Pension Fund Act (Act 600) which provides in pertinent part:

> In the case of the payment of pensions for permanent injuries incurred *in service* and to families of members killed *in service*. ...

53 P.S. § 771 (emphasis added) The majority, in reversing the benefits award, in this case, does so on the basis that the phrase "in service" as used in Act 600 means something different from the phrase "in the service" which appears in the Third Class City Code and which we construed in *Stanton.* According to the majority, "in service" means that, for benefits to be payable, a police officer must be injured while performing his employment duties. The majority distinguishes its conclusion here with our holding in *Stanton* by pointing to the article "the" found in the phrase "in the service". The majority's distinction is flawed. There is no difference in the meaning of the phrases: "in the service" and "in service" as used in the two statutes. I would hold that, similar to our construction in *Stanton,* "in service" as used in Act 600 means that police officers who are injured while in the employ of the police department are entitled to benefits. I, therefore, dissent to that part of the majority opinion which holds otherwise.

As to the remaining issues, I join with the majority in affirming the portion of the award granting disability benefits in the amount of 65 per cent of the officer's monthly salary, and in permitting a reduction of the retirement age from 55 to 53 years of age if an actuarial study determines that the reduction is feasible.

PAPADAKOS, J., joins in this concurring and dissenting opinion.