**BOROUGH OF ELLWOOD CITY,**
a Municipal Corporation,
Appellant,

v.

**ELLWOOD CITY POLICE
DEPARTMENT WAGE
AND POLICY UNIT.**

Commonwealth Court of Pennsylvania.

Argued May 6, 2002.
Decided Aug. 2, 2002.
Reargument Denied Sept. 23, 2002.

Edward Leymarie, Jr., Ellwood City, for Appellant.

Sean T. Welby, Harrisburg, for Appellee.

BEFORE: PELLEGRINI, Judge, FRIEDMAN, Judge, and FLAHERTY, Judge.

OPINION BY JUDGE PELLEGRINI.[1]

The Borough of Ellwood City, a Municipal Corporation (Borough), appeals from an order of the Court of Common Pleas of Lawrence County (trial court) denying its petition to vacate or modify an interest arbitration award (Award) made pursuant to the Collective Bargaining Act (Act 111).[2]

The Ellwood City Policy Department Wage and Policy Unit (Unit) is the bargaining representative of Borough police officers under Act 111. The Unit requested that a panel of arbitrators be appointed pursuant to Sections 4(a) and 7 of Act 111, 43 P.S. §§ 217.4(a) and 217.7, when the Borough and the Unit reached an impasse in bargaining over the terms and conditions of employment for the 1999 calendar year. After proceedings before an arbitration panel concluded, the panel issued an award which established, *inter alia*, that the Borough would provide both long-term and short-term disability benefits to police officers who suffered non-work-related injuries. The award further provided that time spent in receipt of such non-work-related disability benefits would be considered time worked for the purposes of the police pension plan, and that the Borough would continue to deduct pension contributions during such time periods based upon the dollar pension contribution rate of an officer with an equivalent annual salary rate upon which the disability rate was based.

 The Borough petitioned the trial court to vacate or modify those portions of the award mandating that it credit police officers with service for pension purposes during periods of non-work-related disability arguing that it violated section five of the Police Pension Fund Act (Act 600).[3] The trial court denied the petition finding that the award did not grant disabled workers pension benefits, but instead, only permitted them to participate in the pension fund by continuing to contribute to the fund, making them eligible for a pension upon reach superannuation. The trial court further found that pursuant to paragraph (2)(c) of the award, the funding of both short-term · and long-term disability benefits was to be made through insurance policies and, as such, the money used for the disability payments was not generated through the police pension fund. This appeal followed.[4]

---

1. This case was reassigned to the author on June 11, 2002.

2. Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10. Act 111 provides the means by which police officers and firefighters employed by the Commonwealth or political subdivisions thereof may bargain collectively with their employers and settle grievances.

3. Act of May 29, 1956, P.L. (1955) 1804, *as amended*, 53 P.S. § 771.

4. Our scope of review of Act 111 interest arbitration cases is a narrow one. We may only reverse an arbitrator's decision if it was (1) outside the jurisdiction of the arbitrator; (2) the proceedings were irregular; (3) in excess of the arbitrator's powers; and (4) there was a deprivation of constitutional rights. *Pennsylvania State Police v. Pennsylvania State Troopers' Association*, 540 Pa. 66, 656 A.2d 83 (1995). In regard to this scope of review, the Supreme Court has stated that

The Borough contends that the award violates Act 600 because that Act does not provide for the payment of police pension benefits to officers who are disabled by a non-work-related injury, and the arbitration panel exceeded its powers by forcing the Borough to commit an illegal act. We agree.

■ This issue was addressed in *Chirico v. Board of Supervisors for Newtown Township*, 518 Pa. 572, 544 A.2d 1313 (1988), after an arbitration panel determined that any officer permanently and totally disabled as a result of a non-service-related injury was entitled to receive 65% of his salary as a pension until his death. Our Supreme Court reversed, finding that pensions were not permissible for disabled police officers not injured during the course of their employment under Act 600. In so holding, our Supreme Court initially referred to Section 767 of Act 600, 53 P.S. § 767, which provides that benefits may be paid to a member of the police force who shall receive an honorable discharge therefrom by reason of age and service or disability, and noted that the Act did not articulate whether a disability had to be the result of an injury suffered during the course of one's employment before triggering the payment of pension benefits. It then referred to Section 771 of Act 600 which provides for the creation of a pension fund and sets forth the calculations and limitations. The court specified:

> Thus, § 771 sets forth the mechanism for calculating age and service benefits as well as service related disabilities.

> *No mention is made in this provision or any other provision of Act 600 for calculating benefits for a police officer disabled by a non-service related injury. We must therefore conclude that the legislature did not contemplate compensating police officers injured while not on duty.* (Emphasis added.)

*Id.* at 575, 544 A.2d at 1316.

Although the trial court in this case distinguished *Chirico* because "the award does not grant pension benefits, but instead permits the officer to participate in the pension fund by continuing to contribute to the fund, thus, making them eligible for a pension upon reaching superannuation," (trial court op. at 4), what this position ignores is that *Chirico* specifically found that Act 600 does not provide for the payment of pension benefits to disabled police officers who are not injured in the line of duty, and the logical extension of that holding is that those same police officers are not eligible to reach superannuation based on time they are no longer police officers for non-work-related injuries.

■ Not only is the award illegal under Act 600, but it illegally siphons tax funds to subsidize a pension for individuals not eligible to receive those funds. The Municipal Pension Plan Funding Standard and Recovery Act, commonly known as Act 205,[5] was to strengthen municipal pension plans "by requiring actuarially-based current funding standards and by establishing state-aided, voluntary remedi-

---

an arbitrator's powers are limited; he or she may not mandate that an illegal act be carried out, but only that a public employer do that which it could voluntarily. *See Borough of Nazareth v. Nazareth Borough Police Association,* 545 Pa. 85, 680 A.2d 830 (1996). In order to set aside a provision of an award, the arbitration panel must have either mandated

an illegal act or granted an award which addresses issues outside of and beyond the terms and conditions of employment. *City of Butler v. Butler Police Department,* 780 A.2d 847 (Pa.Cmwlth.2001).

**5.** Act of December 18, 1984, P.L. 1005, 53 P.S. § 895.101.

al rules to aid seriously underfunded pension plans in achieving compliance with the standards." *City of Butler.* Under this Act, the General Municipal Pension System State Aid Program governs the Foreign Casualty Insurance Premium Tax Allocation Law [6] with respect to the insurance premium taxes on foreign casualty insurance companies for allocation to the General Municipal Pension System State Aid Program. That program provides that state aid shall be distributed annually based on the following:

> (2) The applicable number of units shall be attributable to each *active employee* who was employed on a full-time basis for a minimum of six consecutive months prior to December 31 preceding the date of certification and who was participating in a pension plan maintained by that municipality, provided that the municipality maintains a generally applicable pension plan for that type of employe which was either established on or prior to December 31, 1984, or, if established after December 31, 1984, has been maintained by that municipality for at least three plan years ... The applicable number of units per employee attributable to each eligible recipient city, borough, incorporated town and township shall be as follows:
>
> > (i) Police officer—two units.
> >
> > (ii) Firefighter—two units.
> >
> > (iii) Employee other than police officer or firefighter—one unit.

Section 402(e)(2) of Act 204, 53 P.S. § 895.402(e)(2). (Emphasis added.) "Police officer" is defined in Section 1 of Act 205 as "a municipal employee who holds a position or an office in the police depart-

ment of the municipality and has retirement coverage provided by the police pension plan." 53 P.S. § 895.102.[7] Under Act 205, "foreign casualty insurance proceeds" are only to be used to fund active employees, not employees who are no longer working, let alone police officers who are no longer police officers for non-work-related reasons.

To adopt the trial court's reasoning would allow an individual on his first day of work who is injured while off-duty to be eligible for and gain service toward a police pension while sitting at home or working another job to the same extent as that of a police officer who served the public every day for 20 or more years. Police pensions are to reward police officers who give years of service to the public, and under both Act 600 and Act 204, it is illegal to make eligible someone who does not give that service to the public or is not injured while serving the public and is not either sitting at home or working another job and working towards another pension.

Accordingly, because the arbitration panel exceeded its authority, the decision of the trial court is reversed.

### *O R D E R*

AND NOW, this *2nd* day of *August,* 2002, the order of the Court of Common Pleas of Lawrence County, dated October 26, 2001, is reversed.

Judge FRIEDMAN dissents.

---

**6.** Act of May 12, 1943, P.L. 259, 72 P.S. §§ 2263.1–2284.

**7.** Section 1 of the Foreign Casualty Insurance Premium Tax Allocation Law defines police-

man as a full-time paid policeman or policewoman working not less than 40 hours per week at a definite salary. 72 P.S. § 2263.1.