**UPPER MORELAND TOWNSHIP,**
**Appellant**

v.

**UPPER MORELAND TOWNSHIP**
**POLICE BENEVOLENT**
**ASSOCIATION.**

Commonwealth Court of Pennsylvania.

Argued March 12, 2012.
Decided May 31, 2012.

Joseph C. Rudolf, Philadelphia, for appellant.

Richard G. Poulson, Philadelphia, for appellee.

BEFORE: SIMPSON, Judge, and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Upper Moreland Township (Township) appeals from the September 15, 2010, order of the Court of Common Pleas of Montgomery County (trial court), denying the Township's petition to vacate the June 30, 2009, Act 111[1] grievance arbitration award. We affirm.

This case arises from a grievance filed by the Upper Moreland Township Police Benevolent Association (Association) on behalf of Police Officer Richard Gump challenging the refusal of the Township to grant him a full superannuation retirement pension. The Township and the Association have been parties to a series of collective bargaining agreements (CBA), which govern the employment terms and retirement conditions for the Township's police officers. The CBA relevant to this matter went into effect on January 1, 2007, and expired December 31, 2010. On July 2, 2007, the parties executed an Addendum to the CBA. The Addendum provides, in relevant part:

> Each Police Employee will become eligible for a NORMAL RETIREMENT PENSION BENEFIT upon completing twenty-five (25) years of credited service, that is the "NORMAL YEARS OF SERVICE". The NORMAL RETIREMENT PENSION BENEFIT will not commence until the Police Employee separates from service and attains the age of fifty (50) years, that is the, "NORMAL RETIREMENT AGE".

(Art. 4.A of the Addendum, R.R. at 69a–70a.) The Addendum further provides that an officer shall earn one year of credited service for every calendar year in which he or she works 1,000 or more hours. (Art. 5.A of the Addendum, R.R. at 70a.)

Officer Gump notified the Township of his intention to retire and enter the Township's Deferred Retirement Option Plan (DROP) program, effective August 1, 2008. At that point, Gump had attained age 50 and, having already served 1,000 compensable hours of service for the year, believed he had provided twenty-five years of "credited service," thereby rendering him eligible for the normal retirement pension benefit. The Township refused Officer Gump's pension request on the basis that he had "yet to provide the Township with 25 calendar years of service." (Township Ltr., 6/30/08, R.R. at 215a.) The Township explained that the 1,000 service-hours requirement "does not truncate the 'calendar year' to 1,000 hours or approximately 6 months." (*Id.*)

---

1. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10 (Policemen and Firemen Collective Bargaining Act commonly referred to as "Act 111"). Act 111 deals with the rights of police officers to bargain collectively with their public employers regarding the terms and conditions of the employment, including pensions and other benefits, and, if they fail to reach an agreement, to proceed to arbitration for resolution. *Northampton Township v. Northampton Township Police Benevolent Association,* 885 A.2d 81, 82 n. 1 (Pa.Cmwlth.2005).

The Association filed a grievance on behalf of Officer Gump challenging the Township's refusal. The matter proceeded to arbitration. The arbitrator sustained the grievance upon finding that the pension benefit was legal under the act commonly referred to as "Act 600"[2] and required by the parties' CBA. The arbitrator's award required the Township to comply with the credited-service calculation method, which was voluntarily entered into by the parties, and directed the Township to enter Officer Gump in the DROP program, effective August 1, 2008. From this decision, the Township filed a petition to vacate the arbitration award with the trial court. By order dated September 15, 2010, the trial court denied the petition. The Township now appeals from that decision.

 The Township argues that the trial court erred by failing to vacate the arbitration award permitting a police officer to receive a full superannuation retirement benefit after only twenty-four-and-one-half calendar years of service, where the CBA prohibits pension benefits that are not permitted under Act 600, and where the severability clause of the CBA specifies that illegal benefits are unenforceable and directs the parties to bargain over replacement benefits.[3] We disagree.

Act 600 establishes the minimum service and age requirements an employee must satisfy in order to retire. Section 3 of Act 600, 53 P.S. § 769 (emphasis added), provides:

Each ordinance or resolution establishing a police pension fund shall prescribe *a minimum period of total service in the aggregate of twenty-five years* in the same borough, town, township or regional police department and shall fix the age of the members of the force at fifty-five years, or, if an actuarial study of the cost shows that such reduction in age is feasible, may fix the age of the members of the force at fifty years, after which they may retire from active duty, and such members as are retired shall be subject to service, from time to time, as a police reserve, in cases of riot, tumult or preservation of the public peace until unfitted for such service, when they may be finally discharged by reason of age or disability.

Act 600 does not define "total service in the aggregate of twenty-five years."

Citing *Chirico v. Board of Supervisors for Newtown Township*, 518 Pa. 572, 544 A.2d 1313 (1988), and *Borough of Ellwood City v. Ellwood City Police Department Wage and Policy Unit*, 805 A.2d 649 (Pa. Cmwlth.2002), the Township contends that a police officer must actually work (or be absent due to a work-related injury) in order to earn "service" for pension purposes. The issue in *Chirico* and *Ellwood* was whether the arbitration award violated Act 600 because the act does not provide for the payment of police pension benefits

---

**2.** Act of May 29, 1956, P.L. (1955) 1804, *as amended*, 53 P.S. §§ 767–778. The trial court refers to Act 600 as the "Police Pension Fund Act."

**3.** Judicial review of a grievance arbitration award arising under Act 111 is in the nature of narrow certiorari. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 540 Pa. 66, 71, 656 A.2d 83, 85 (1995). "The narrow certiorari scope of review limits a reviewing court to questions regarding: (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights." *Id.* As our Supreme Court has instructed, an arbitrator only exceeds his power if he mandates that an illegal act be carried out or requires a public employer to do that which the employer could not do voluntarily. *Id.* at 79, 656 A.2d at 90.

to officers who are disabled by a non-work-related injury. In *Chirico,* an arbitration panel determined that any officer permanently and totally disabled as a result of a non-service-related injury was entitled to receive sixty-five percent of his salary as a pension until his death. *Chirico,* 518 Pa. at 577, 544 A.2d at 1316. Our Supreme Court reversed, finding that pensions were not permissible for disabled police officers not injured during the course of their employment under Act 600.[4] *Id.* at 576, 544 A.2d at 1316.

Similarly, in *Ellwood,* this court held that "Act 600 does not provide for the payment of pension benefits to disabled police officers who are not injured in the line of duty." 805 A.2d at 651. The award in *Ellwood* did not grant pension benefits, but instead permitted the officers to participate in the pension fund by continuing to contribute to the fund, thus, making them eligible for a pension upon reaching superannuation. We reasoned that the "logical extension" of *Chirico* is "that those same police officers are not eligible to reach superannuation based on time they are no longer police officers for non-work-related injuries." *Id.*

The Township contends that, since Act 600 prohibits an officer who is employed but absent from work due to a non-work-related injury from earning pension service during his absence, Act 600 should likewise prohibit a *retired* officer from earning service time.[5] *Chirico* and *Ellwood* do not stand for this proposition and are distinguishable from the instant case. This case does not involve a non-work-related disability pension benefit nor does it involve an officer not working due to an injury. Rather, this case involves an officer who worked 1,000 hours, which, according to the parties' CBA, entitles him to one year of credited service for retirement purposes. Nothing in *Chirico* or *Ellwood* precludes pension eligibility based upon completion of twenty-five years of "credited service."

■■■ The Addendum, to which the parties voluntarily agreed, requires a pension benefit upon satisfying the credited-service criteria. The Addendum does not require an employee to complete an entire calendar year in order for that year to count towards credited service. Moreover, Act 600 does not prohibit a police officer from obtaining his full superannuation pension benefits based upon twenty-five years of credited service. Act 600 merely prescribes "a minimum period of total service in the aggregate of twenty-five years." 53 P.S. § 769. Act 600 does not dictate that the twenty-five years of service must be actual linear calendar service in order to reach normal retirement eligibility, nor

---

**4.** The Supreme Court examined section 5 of Act 600, 53 P.S. § 771, which sets forth the mechanism for calculating age and service benefits as well as service-related disabilities, and observed that "[n]o mention is made in this provision or any other provision of Act 600 for calculating benefits for a police officer disabled by a non-service related injury." *Chirico,* 518 Pa. at 576, 544 A.2d at 1316.

**5.** The DROP program permits police officers to retire for pension calculation purposes but continue working for up to thirty-six additional months. (Article XX of the CBA, R.R. at 59a–60a; Section 1.04.01(d) of the Upper Moreland Township Ordinance No. 1545

(DROP Ordinance), S.R.R. at 11b–12b.) During the DROP period, officers will continue to work and earn their regular salary, but they also receive monthly pension payments, which are paid into a designated DROP account. (Section 1.04.01(e) of the DROP Ordinance, S.R.R. at 12b.) Upon separation from service, officers will then be entitled to receive their accumulated DROP funds in a lump-sum payment, and will thereafter receive their monthly pension payments calculated as of the date they originally entered the DROP Program. (Section 1.04.01(g) of the DROP Ordinance, S.R.R. at 12b.)

does it prohibit "credited service" in the calculation. We, therefore, conclude that the arbitrator did not exceed his authority by permitting Officer Gump to receive a full superannuation retirement benefit upon completion of twenty-five years of "credited service." [6]

Accordingly, we affirm the order of the trial court.

## ORDER

AND NOW, this *31st* day of *May*, 2012, we hereby affirm the September 15, 2010, order of the Court of Common Pleas of Montgomery County.

---

**6.** Even if the credited-service provision was illegal, the courts of this Commonwealth have consistently denied attempts by public employers or unions to vacate voluntarily agreed-upon provisions of a CBA on the grounds of illegality. *Borough of Mahanoy City v. Mahanoy City Police Department,* 948 A.2d 239, 242–243 (Pa.Cmwlth.2008) ("A public employer who voluntarily agrees to a provision in a collective bargaining agree-ment may not later object to that provision on the basis of illegality.") Moreover, there is a constitutional bar to diminishing the pension benefits of current employees or retirees. *City of Wilkes–Barre v. City of Wilkes–Barre Police Benevolent Association,* 814 A.2d 285, 288 (Pa.Cmwlth.2002). Therefore, Officer Gump's pension benefit cannot be diminished in this case.