**BOROUGH OF ELLWOOD CITY,
a Municipal Corporation,
Appellant,**

v.

**ELLWOOD CITY POLICE
DEPARTMENT WAGE
AND POLICY UNIT.**

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2001.

Decided Nov. 8, 2001.

Richard D. Miller, Pittsburgh, for appellant.

Eric C. Stoltenberg, Harrisburg, for appellee.

Before PELLEGRINI, Judge,
LEADBETTER, Judge (P.),
JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

The Borough of Ellwood City (Borough) appeals from the December 21, 2000 order of the Court of Common Pleas of Lawrence County (trial court) that denied the Borough's petition to vacate an arbitration award, thereby affirming Arbitrator Edward J. O'Connell's August 5, 1999 grievance arbitration award (O'Connell Award). That award ordered the termination of all contributions by the Borough's police officers to the Borough's Police Pension Plan (Plan) and required the refund of all such contributions made since January 14, 1999.

The Borough contends that Arbitrator O'Connell exceeded his authority by requiring the performance of an illegal act under what is commonly referred to as Act 600 [1] by eliminating employee contributions to the Plan, thereby requiring the Borough to make contributions to the Plan as required by Act 600 in order to keep it actuarially sound. The Borough also contends that the trial court's decision upholding the O'Connell Award was based on the erroneous assumption that a police pension plan with a surplus of assets over liabilities would require no annual contribution to that fund to keep it actuarially sound for purposes of Act 600. For the reasons that

1. Act of May 25, 1956, P.L. (1955) 1804, *as amended*, 53 P.S. §§ 767–778.

follow, we reverse and vacate the arbitration award.

On January 14, 1999, the Borough began withholding employee contributions to the Plan at a rate of 5.6% of a police officer's gross monthly wages. This payroll deduction was implemented as a result of a determination by the Borough's actuary based on a January 1, 1999 actuarial valuation report, which was required to be performed pursuant to the Municipal Pension Plan Funding Standard and Recovery Act,[2] more commonly referred to by the parties as Act 205. This report, known as an Act 205 report, indicated that these contributions were needed in order to enable the Plan to meet its annual funding requirements.

In response to the Borough's action, on January 14, 1999, the Police Department's Wage and Policy Unit (Police Bargaining Unit) filed an "Act 111"[3] grievance challenging the contributions on the ground that they violated Article V, Sections G(1) and (3) of the parties' CBA, which provide:

(1) Employees of the Ellwood City Police Department shall not contribute any wages to the pension fund.

. . . .

(3) In the event it is actuarially determined that the amount of annual contribution is not keeping the Plan actuarially sound, then such contribution shall be increased at a percentage necessary to make the Pension fund again actuarially sound. ·

In response, the Borough cited Article V, Section A(1) of the CBA, which provides:

(1) The Borough of Ellwood City Police Pension Fund shall comply with Act 600, Police Pension Act, and Borough Ordinance # 1264, enacted January 19, 1957, and # 1349, enacted November 6, 1958, attached hereto and incorporated herein, with subsequent amendments.

The Borough argued that under Section 6(c) of Act 600, 53 P.S. § 772(c), as well as Act 205, employee contributions to the Plan could not be eliminated where the result would be that the municipality would have to make contributions to keep the Plan actuarially sound. The Borough claimed that the required Act 205 study, which was performed by the Borough's actuary, indicated that the Plan would need an additional $28,000 in employee contributions in order to be actuarially sound for the year 1999 and that, therefore, Section 6 of Act 600 prohibited the elimination of employee contributions for 1999.

To support its position, the Borough cited *Borough of Doylestown v. Doylestown Borough Police Ass'n,* 732 A.2d 701 (Pa. Cmwlth.1999), *appeal denied,* 563 Pa. 666, 759 A.2d 388 (2000) and *Swatara Tp. v. Swatara Tp. Police Dep't,* 164 Pa.Cmwlth. 378, 642 A.2d 660 (1994). In *Doylestown,* this Court determined that an arbitrator exceeded his authority by ordering a reduction in employee contributions where a recent Act 205 study indicated that the pension fund did not meet the actuarial requirements of Section 6 of Act 600. In *Swatara Tp.,* this Court determined that the arbitrator exceeded his authority inasmuch as he violated Act 600 by issuing an award requiring the municipality to pay its police officers a salary increase in an

---

**2.** Act of December 18, 1984, P.L. 1005, *as amended,* 53 P.S. §§ 895.101—895.803.

**3.** Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1—217.10, relating to collec-tive bargaining by police officers and fire fighters, is commonly referred to as "Act 111."

amount equal to the amount of pension contributions needed to keep the pension fund actuarially sound. The Court reasoned that such a provision was an indirect method of reducing employee contributions in violation of Act 600.

Here, Arbitrator O'Connell relied upon a 1992 grievance award issued by Arbitrator Edward E. McDaniel (McDaniel Award), which determined that for purposes of the parties' 1991 CBA, the term "actuarially sound" meant that the Plan's assets exceeded its liabilities. Specifically, the McDaniel Award provided:

> Unrefuted evidence that the Police Pension Plan had enjoyed an "overfunded condition"—in actuarially determined "assets over liabilities" values—is seen to *preclude* any finding of "actuarially unsound" condition therein, however, in this case. In none of its effective language is the Parties' Agreement shown to have expressed any intent that any "employee contributions" obligation was to be imposed for satisfaction of any "annual costs" of any Pension Plan in any overfunded condition—as here. In its negotiated wording, the Parties' Agreement is shown to have expressed a clear intent that "employee contributions" were *not* to be required until needed to maintain the Police Pension Plan fund in an "actuarially sound" condition—with respect to its actuarially determined assets and liabilities—at any time.

McDaniel Award, p. 10; R.R. 58a.

In the case *sub judice*, Arbitrator O'Connell noted that Article V, Sections G(1) and (3), which had been interpreted by Arbitrator McDaniel, were readopted without change by the parties in their 1993–94, 1995–97 and 1998 CBAs. Hence, Arbitrator O'Connell determined that the McDaniel Award was included as a part of those CBAs. In addition, the arbitrator found *Doylestown* and *Swatara Tp.* to be inapplicable because of the different contract language in the present case. Consequently, Arbitrator O'Connell issued an award that sustained the Police Bargaining Unit's grievance. The award also directed that all employee contributions be terminated and required that all such contributions made since January 14, 1999 be refunded.

▮ The Borough then filed a petition to vacate the O'Connell Award. On December 21, 2000, the trial court issued an order denying the Borough's petition to vacate and affirming the O'Connell Award. In its decision, the trial court determined that Arbitrator O'Connell correctly interpreted the terms of the CBA and that the award was not contrary to the provisions of Act 600. The Borough's appeal to this Court followed. In *Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Betancourt)*, 540 Pa. 66, 656 A.2d 83 (1995), the Supreme Court recognized that *narrow certiorari* review is applicable to Act 111 grievance arbitrations and that, therefore, this Court is limited to determining questions regarding: (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) the deprivation of constitutional rights.

I.

The Borough's first argument is that Arbitrator O'Connell exceeded his authority by issuing an award eliminating employee contributions to the Plan in violation of Section 6 of Act 600, which would therefore require the Borough to make contributions to the Plan in order to keep it actuarially sound. Section 6 of Act 600 provides in pertinent part:

> (c) If an actuarial study shows that the condition of the police pension fund

of any borough, town, township or regional police department is such that payments into the fund by members may be reduced below the minimum percentages hereinbefore prescribed, or eliminated, and that if such payments are reduced or eliminated contributions by the borough, town, township or regional police department will not be required to keep the fund actuarially sound, the governing body of the borough, town, township or regional police department may, on an annual basis, by ordinance or resolution, reduce or eliminate payments into the fund by members.

53 P.S. § 772(c).

The Borough asserts that the 5.6% payroll deduction instituted on January 14, 1999 was based on a determination by the Borough's actuary that the Plan had a shortfall of approximately $28,000 for the funding year 1999.[4] These calculations were based on the Borough's January 1, 1999 Act 205 report.[5]

■ Citing *Doylestown*, the Borough contends that Arbitrator O'Connell exceeded his authority by ignoring the Borough's Act 205 report in determining whether the Plan was in fact "actuarially sound" for purposes of eliminating employee contributions as permitted by Section 6(c) of Act 600. This Court agrees.

In his decision, Arbitrator O'Connell noted that the 1992 McDaniel Award determined that the parties agreed, as indicated by the provisions of their CBA, that the term "actuarially sound" meant "assets over liabilities" and that the parties did not intend that any "employee contribution" obligations be imposed while the Plan's

assets exceeded its liabilities. Arbitrator O'Connell then reasoned that because no objection was raised to the McDaniel Award when it was issued or thereafter, it must be deemed to have been adopted by the parties in their future CBAs, which all included the same language. Citing *Pennsylvania State Lodge of Fraternal Order of the Police v. Hafer*, 525 Pa. 265, 579 A.2d 1295 (1990), the arbitrator stated that "issues over pension contributions are generally a subject for collective bargaining and that this might result in municipalities rather than officers making any necessary contributions." Arbitrator O'Connell's Award, p. 6; R.R. 8a. Consequently, Arbitrator O'Connell determined that the 1999 employee contributions were not in accord with the terms of the parties' CBA and sustained the Police Bargaining Unit's grievance.

■ This Court, however, in *Doylestown* determined that Act 205 provides the *only* method that may be used in determining whether a municipally administered pension plan is "actuarially sound" for purposes of implementing a reduction in employee contributions. As noted in *Doylestown*, Section 301 of Act 205, relating to minimum funding standards for municipal pensions, provides:

(a) **Application.**—Notwithstanding any provision of law, municipal ordinance, municipal resolution, municipal charter, *pension plan agreement or pension plan contract to the contrary*, the applicable provisions of this chapter *shall* apply to any municipality which has established and maintains, directly or indirectly, a pension plan for the benefit of its employees, irrespective of the manner in

---

**4.** *See* Factual Background, Arbitrator O'Connell's Award, pp. 3–4; R.R. 5–6a.

**5.** The preparation and requirements of an Act 205 report are governed by Sections 201–208

of Act 205, 53 P.S. §§ 895.201—895.208. The Borough's January 1, 1999 Act 205 report is reproduced at R.R. 113–129a.

which the pension plan is administered, and to the respective pension plan.

53 P.S. § 895.301(a) (emphasis added). As indicated by Section 301(a), the provisions of Chapter 3 of Act 205, 53 P.S. §§ 895.301—895.307, relating to municipal funding standards for municipal pension plans, are applicable to municipal pension plans notwithstanding the existence of any inconsistent agreement between the municipality and its employees.

As this Court also noted in *Doylestown*, Section 302 of Act 205, 53 P.S. § 895.302, mandates that the financial requirements of municipal pension plans for the following year be based on the most recent Act 205 report. Thus, this Court recognized that "[b]y mandating that only Act 205 reports are to be used to determine a Plan's financial soundness and financial requirements, [Section 302] required that the 'actuarial study' used in Act 600 be used to determine if member contributions could be reduced or eliminated." 732 A.2d at 704.

With those principles in mind, this Court in *Doylestown* determined that the municipality in that case could not reduce member contributions where the pension fund was found to be underfunded in the applicable Act 205 report:

> Because the 1995 report found that the Plan was underfunded, the Borough could not voluntarily reduce the amount of member contributions below the 5% required by Act 600 because the most recent Act 205 report indicated a deficit in the Plan. *As such, the arbitrator's award is illegal under Act 600 because it orders the Borough to reduce the amount of member contributions to the Plan when the Plan was found to be underfunded in the most recent Act 205 report. Moreover, the award would require the Borough to use a method, other than the one statutorily mandated by*

*Act 205, to determine the minimum funding requirements of the Plan.*

*Id.* at 704–705 (emphasis added, footnote omitted).

We believe that the rationale in *Doylestown* is equally applicable to the case at bar. Where, as here, the Borough's January 1, 1999 Act 205 report indicated that the Plan was underfunded and that a 5.6% employee contribution was necessary to keep the Plan actuarially sound as required by Act 600, Arbitrator O'Connell exceeded his authority by issuing an award inconsistent with the provisions of Act 600.

■ Nevertheless, the Police Bargaining Unit argues before this Court that the O'Connell Award is enforceable even if contrary to the provisions of Act 600 because the Borough, by continuing to enter into a series of CBAs with the Police following the McDaniel Award, willingly agreed to the continued application of that decision. Therefore, the Police Bargaining Unit maintains that the Borough cannot now seek to avoid its earlier agreement by attempting to redefine Article V, Sections G(1) and (3) of the CBA through this appeal.

In support of its position, the Police Bargaining Unit cites *Fraternal Order of Police v. Hickey*, 499 Pa. 194, 452 A.2d 1005 (1982), *Grottenthaler v. Pennsylvania State Police*, 488 Pa. 19, 410 A.2d 806 (1980), and *Upper Chichester Tp. v. Pennsylvania Labor Relations Board*, 153 Pa. Cmwlth. 446, 621 A.2d 1134 (1993), for the proposition that the Borough cannot object on the ground of illegality of the pension provisions to which it voluntarily agreed during the collective bargaining process. However, neither *Hickey, Grottenthaler* or *Upper Chichester* involved a situation where both Act 111 and Act 600 were applicable.

In *Swatara Tp.*, this Court stated that "[i]n cases where both Act 111 and Act 600 are applicable, we have held that the provisions of Act 600 limit the authority granted by Act 111 with respect to arbitration." 642 A.2d at 662. In *Swatara Tp.*, we recognized that if the arbitrator's award required the municipality "to take action that is even *impliedly* prohibited by Act 600, then the award is beyond the scope of the Arbitrator's authority." *Id.* at 663.

Therefore, this Court stated: "Under Act 600, only the Township has authority to decide whether to eliminate member contributions." *Id.* In addition, we recognized that the Township could have done so only under circumstances that did not exist in that case: *i.e.,* where member contributions would not be necessary to keep the fund actuarially sound.

We believe that the rationale in *Swatara Tp.* is equally applicable to the present case. Inasmuch as the O'Connell Award is contrary to the parties' obligations under Act 600, the award is beyond the scope of the arbitrator's authority and is, therefore, illegal.

## II.

The Borough's second argument is that the trial court erred in upholding the O'Connell Award inasmuch as it was based on an inaccurate assumption that because the Plan had a surplus of assets over liabilities, no annual employee contributions were required. In its decision, the trial court determined that Article V, Sections G(1) and (3) of the CBA were not in conflict with Article 600 because as of January 1, 1999, the Plan had a surplus of assets over liabilities, which resulted in a negative unfunded actuarial liability in excess of $60,000. The trial court thus reasoned:

> Based on the understanding that a pension plan with a surplus of assets over liabilities, resulting in a negative unfunded actuarial liability of more than $60,000.00 would require no contributions for the year, the Court concludes that the arbitrator's award did not violate Act 600 nor did it mandate any illegal action by the Borough.

> Furthermore, under the provisions of § 772(c) of Act 500, [sic] 53 P.S. § 772(c), the Borough could voluntarily have kept officer contributions at zero based on the current actuarial soundness of the plan; therefore, the arbitrator acted within his authority by ordering action which the Borough could voluntarily have followed.

Trial Court's Opinion, p. 13; R.R. 109a.

In light of *Doylestown*, this Court disagrees with the trial court. As the Borough notes in its brief, neither Act 600 nor Act 205 permit the elimination of employee contributions to a municipal pension fund merely because the fund's assets exceed its liabilities. Rather, Section 302(c) of Act 205, 53 P.S. § 895.302(c), limits the amount of the annual financial requirements that can be recaptured by means of an excess of assets over liabilities. This permitted reduction is capped at 10% of the amount assets exceed liabilities.

In the case *sub judice*, the Borough's actuary determined, based on the Plan's January 1, 1999 Act 205 report, that the Plan's annual financial requirement could not be met using the 10% of assets over liabilities formula. The Police Bargaining Unit did not dispute this fact. Consequently, pursuant to Section 6(c) of Act 600, 53 P.S. § 772(c), employee contributions could not be eliminated. *Doylestown.*

In view of the foregoing, we conclude that the trial court erred in determining that the O'Connell Award did not violate the provisions of Act 600. Accordingly, we reverse the order of the trial court and

vacate Arbitrator O'Connell's August 5, 1999 Award.

### *ORDER*

AND NOW, this 8th day of November, 2001, the December 21, 2000 order of the Court of Common Pleas of Lawrence County is hereby REVERSED and the August 5, 1999 Arbitration Award is VACATED.