**BRISTOL BOROUGH, Appellant,**

**v.**

**BRISTOL BOROUGH POLICE BENEVOLENT ASSOCIATION.**

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 2002.

Decided Jan. 2, 2003.

Reargument Denied Feb. 21, 2003.

James A. Downey, III, Langhorne, for appellant.

Anthony C. Busillo, II, Harrisburg, for appellee.

Before McGINLEY, J., PELLEGRINI, J., and McCLOSKEY, Senior Judge.

OPINION BY Judge PELLEGRINI.[1]

Bristol Borough (Borough) appeals from an order of the Court of Common Pleas of Bucks County (trial court) affirming an award of an arbitration panel which included a provision regarding the method of funding the pension fund of the police employees of the Borough.

On March 27, 2000, pursuant to Act 111,[2] the Bristol Borough Police Benevolent Association (Association) and the Borough entered into compulsory labor arbitration. As a result of those proceedings, the arbitration panel issued an award, including, in relevant part, the following provision:

*Article 23 G Police Employee Contributions to Pension Plan*

Each police employee will contribute money to the pension plan and retirement fund only to the extent necessary to maintain actuarial soundness of the pension plan and retirement fund. The Borough will direct its actuary to credit the pension plan fund annually with up to the maximum amount of Act 205 monies attributable to the police employees necessary to maintain the actuarial soundness of the pension plan and retirement fund, with minimal over-funding. If the actuary determines the police pension plan and retirement fund requires additional moneys to maintain actuarial soundness, police employees will contribute up to a maximum of the five percent (5%) level, in accord with Act 600. The total contributed amount required of police employees will be apportioned among the full-time police employees according to their gross compensation or salary, as currently defined. The Borough shall contribute its moneys to the police pension plan and retirement fund only after police employees have contributed at the maximum of the five percent (5%).

(Reproduced Record at 116a–117a).

■■■ Alleging that the award exceeded the arbitration panel's powers, the Borough appealed to the trial court. Following a hearing, the trial court found that because the arbitration panel's award merely required the Borough to do what it could within its discretion, it did not exceed its powers and denied the Borough's appeal. This appeal followed.[3]

---

1. This opinion was reassigned to the author on December 3, 2002.

2. Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10.

3. Our scope of review of Act 111 interest arbitration cases is a narrow one. We may only reverse an arbitration panel's decision if it was (1) outside the jurisdiction of the arbitration panel; (2) the proceedings were irregular; (3) in excess of the arbitration panel's

As before the trial court, the Borough contends that the award issued by the arbitration panel exceeded the arbitration panel's powers because it violates the Municipal Pension Plan Funding Standard and Recovery Act (Act 205), Act of December 18, 1984, P.L. 1005, *as amended,* 53 P.S. §§ 895.101–895.802. The Association, however, argues that the arbitration panel did not exceed its authority in issuing the award containing Article 23G because and pursuant to Act 111, an arbitration panel has the authority to mandate that a public employer take . any action which the employer could undertake voluntarily, and Act 205 grants a municipality total discretion in the allocation of state monies to its pension plans.

■ While it is correct that an arbitration panel can order a political subdivision to do anything within its delegated authority, *see Bensalem Township v. Bensalem Township Benevolent Association, Inc.,* 803 A.2d 239 (Pa.Cmwlth.2002); *Tate v. Antosh,* 3 Pa.Cmwlth. 144, 281 A.2d 192 (1971), it "may be in excess of the exercise of the arbitrators' powers if it requires the public employer to perform an act that it is prohibited by law from performing ... or if it does not involve legitimate terms or conditions of employment. . . ." *Appeal of Upper Providence Township,* 514 Pa. 501, 514–515, 526 A.2d 315, 321–322 (1987).[4]

In *Pennsylvania State Lodge of the Fraternal Order of Police v. Hafer,* 525 Pa. 265, 579 A.2d 1295 (1990), writing for the Court, then Justice, now Chief Justice Zappala, explained that the principal purpose behind the General Assembly's enactment of Act 205 was to rectify the disparity that existed under the previous system of providing pension funds for police and fire employees where some pension plans were overfunded and others were underfunded, stating:

Prior to the enactment of Act 205, the law required that the entire amount of state aid received from the tax on foreign casualty insurance premiums be allocated solely for the benefit of police pension funds. Firefighters pensions were funded by a tax on foreign fire insurance premiums. None of these monies could be allocated for or distributed to any non-uniformed employee pension funds. Further, the formula used to allocate funds was not based on actual cost or need. One of the effects of that formula was that some pension plans were overfunded and others were severely underfunded. The Public Employee Retirement Study Commission, which was established to examine this issue, estimated that "unfunded accrued liabilities of municipal funds in Pennsylvania [had] been increasing by more than $150 million annually and ... [ex-

---

powers; or (4) there was a deprivation of constitutional rights. *Borough of Ellwood City v. Ellwood City Police Department Wage and Policy Unit,* 805 A.2d 649 (Pa.Cmwlth. 2002). In regard to this scope of review, our Supreme Court has stated that an arbitration panel's powers are limited; it may not mandate that an illegal act be carried out, but only that a public employer do that which it could do voluntarily. *See Borough of Nazareth v. Nazareth Borough Police Association,* 545 Pa. 85, 680 A.2d 830 (1996). In order to set aside a provision of an award, the arbitration panel must have either mandated an illegal act or granted an award which addresses

issues outside of and beyond the terms and conditions of employment. *City of Butler v. City of Butler Police Department, Fraternal Order of Police Lodge No. 32,* 780 A.2d 847 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 568 Pa. 620, 792 A.2d 1255 (2001).

4. Section 1 of Act 111 provides that police have the right to bargain collectively with their public employers concerning "the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits[.]" 43 P.S. § 217.1.

ceeded] $2.5 billion." Report to the General Assembly and the Governor of Pennsylvania, January 1983, page i. To rectify this situation, the Commission recommended that aid be allocated to municipal pension plans based upon actual employee participation. The Commission also recommended that the aid no longer be dedicated to particular plans, but be in the form of non-restricted allocations that the municipalities could distribute at their discretion to adjust for particular local needs.

*Id.* at 270, 579 A.2d at 1298. Although it was not addressing the authority of an arbitration panel in crafting an award pursuant to an interest arbitration proceeding, as in the present case, the Court concluded that the principal purpose of Act 205 was to rectify the disparity among municipal pension plans under the previous system and rejected the FOP's assertion that municipalities were required to allocate Act 205 funds pursuant to the unit allocation formula of Section 402(e) of Act 205.[5] It did so because that interpretation would put forward an unreasonable result, i.e., taking away the discretion of the municipalities to allocate the funds as they saw fit where the General Assembly specifically provided that such discretion belonged with the municipalities in order to ensure

the fiscal integrity and actuarial soundness of all their pension plans.[6]

At issue in this case is Section 402(g) of Act 205, which provides:

**Authorized expenditures of general municipal pension system State aid.—** Any general municipal pension system State aid received by a municipality shall only be used to defray the cost of the pension plan or pension plans maintained by the municipality. If only one pension plan is maintained by the municipality, then the total amount of the general municipal pension system State aid received by the municipality shall, within 30 days of receipt by the treasurer of the municipality, be deposited in the pension fund or the alternate funding mechanism applicable to the pension plan. If more than one pension plan is maintained by the municipality, then the governing body of **the municipality shall annually determine the proportion of the total amount of the general municipal pension system State aid received by the municipality which shall be credited to each pension plan** and the total amount of the general municipal pension system State aid received by the municipality shall, within 30 days of receipt by the treasurer of the municipality, be deposited in the pension funds or alternate funding

---

5. Section 402(e) provides the guidelines for the allocation of general municipal pension system state aid to the municipalities based on the number of employees within each eligible recipient municipality.

6. This Court has also rejected arbitration awards involving Act 205 and concluded that the arbitration panel exceeded its authority in *Borough of Ellwood City* (arbitration panel exceeded its authority when it issued award providing that the borough would provide both long-term and short-term disability benefits to police officers who suffered non-work-related injuries because such award violated Act 600); *Borough of Ellwood City v. Ellwood*

*City Police Department Wage and Policy Unit,* 805 A.2d 649 (Pa.Cmwlth.2001), *petition for allowance of appeal granted,* 568 Pa. 740, 798 A.2d 1291 (2002) (arbitration panel exceeded its authority in directing a reduction of employee contributions where the applicable Act 205 actuarial study indicated that the pension fund did not meet the actuarial requirements of Section 6 of Act 600, making it underfunded); *City of Butler* (same); and *Borough of Doylestown v. Doylestown Borough Police Association,* 732 A.2d 701 (Pa.Cmwlth.1999), *petition for allowance of appeal denied,* 563 Pa. 666, 759 A.2d 388 (2000) (same).

mechanisms applicable to the respective pension plans in accordance with that determination.

53 P.S. § 402(g) (emphasis added).

Act 205 clearly provides that state money received by the municipality for pension plans is to be split between the various pension plans in the manner seen fit by the municipality. Although it is true that an arbitration panel can order the municipality to undertake any act which it otherwise could do voluntarily, and Act 205 allows a municipality to allocate between pension funds, applying that analysis in this case would negate the clear intent of the General Assembly because when it enacted Act 205, it specifically took the power to allocate those funds away from an arbitration panel and vested sole discretion in the local municipality.

 Prior to the enactment of Act 205, foreign casualty payments were to only go to police pension plans; however, due to the imbalance among other municipal pension plans in that some plans such as the police pensions were overfunded when, at the same time other plans were underfunded, the General Assembly sought to rectify that inequity by enacting Act 205 and mandating that the municipality determine how the funds should be allocated. Because under Act 205 the General Assembly specifically provided that the allocation of state funds is to be determined by the municipality, it took away from the arbitration panel the authority to dictate the allocation of those funds. To hold otherwise would mean that an arbitration

panel can now make an award that can vitiate Act 205's goal to rectify the problem of underfunded municipal pension funds.[7]

Accordingly, because the arbitration panel's award contravenes the purpose of Act 205, the order of the trial court is reversed.

### ORDER

AND NOW, this *2nd* day of *January*, 2003, the order of the Court of Common Pleas of Bucks County, No.2000–3196–14–6, dated January 8, 2002, is reversed.

---

**7.** We also note that to allow an arbitration panel to dedicate a funding source for pensions would sanction an arbitration panel award to dedicate a funding stream, e.g., the wage tax to fund police salaries in general. However, Section 1 of Act 111 only provides for collective bargaining concerning "terms and conditions of employment" such as compensation, not the manner in which compensation is to be provided. Accordingly, while a municipality is required to fund an arbitration panel award even if it requires an increase in taxes, *see Tate v. Monacello*, 3 Pa.Cmwlth. 144, 281 A.2d 192 (1971), absent some express direction from the General Assembly, how an award is funded is within the discretion of the municipality.